IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BATTLE TOYS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-928-GMS |
| ) | |
| LEGO SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NO. 7,740,518

After having considered the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent No. 7,740,518 (the "'518 patent"):

1. The phrase "stable footing on said playing surface to maintain said body section in an upright position without the use of centrifugal force" is construed to mean "a structure that contacts the playing surface to support the body section so that it does not fall over when not spinning."[1]

---

[1] The parties presented the disputed language in two terms to be construed -- "stable footing on said playing surface" and "maintain said body section in an upright position without the use of centrifugal force." While certain aspects of the separate terms will be addressed individually, the disputed language will be construed in its entirety. The two terms are functionally coupled to each other, were added to the claim as a single element, were argued as a single element to the patent office, and are found together in a disputed means plus function claim. It is well established that a phrase must be understood in the context in which it appears in the claim. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*) (concluding that the context in which a term appears in a claim is "highly instructive" in construing the meaning of that term).

The parties' focus their arguments on "stable footing" and "upright." The plaintiff, Battle Toys LLC ("Battle Toys") argues that "stable footing" and "upright" do not need to be construed because the terms have plain and ordinary meanings that were not redefined or disclaimed. (D.I. 41 at 3-9.) It further argues the meaning of "stable footing" is especially apparent when read in context of the surrounding

claim language -- a footing is therefore stable if it "maintain[s] said body in an upright position without the use of centrifugal force." (*Id.* at 5.) As an alternative, Battle Toys proposes "stable footing" and "upright" in the disputed phrase should be construed as "a stable base portion that contacts the playing surface," (*id.* at 7), to "support the body section so that it does not fall over when not spinning," (*id.* at 9).

The defendant, LEGO Systems, Inc. ("LEGO") argues that the intrinsic record supports its proposed constructions of "upright" as "perpendicular" or "substantially perpendicular," (D.I. 45 at 10), and "stable footing" as "a structure providing support on the playing surface that resists sudden changes of orientation, such as shaking, toppling or falling over, when subjected to a force," (D.I. 40 at 5-6). Specifically, LEGO notes that "stable footing" appears only once in the specification -- in the travel element embodiment that includes multiple bearings with "at least three bearings providing a stable footing on the playing surface." (D.I. 40 at 6; '518 patent at 6:5-8.) It contends the lone description clearly indicates that to be "stable" there must be three points of contact on the playing surface, and that "there are no other express indications that [the other disclosed travel elements] necessarily present a 'stable footing.'" (D.I. 40 at 6.) LEGO further argues that the patentee disavowed the other disclosed travel element embodiments and narrowed the claim scope by amending the term "stable footing" to the claims in order to overcome prior art. (*Id.*)

The court is not persuaded by LEGO's arguments. It is well established that "claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). As discussed in detail below, the court finds the patentee did not "clear[ly] disavow[]" or "use words or expressions of manifest exclusion or restriction" to limit the invention to a single embodiment requiring three points of contact on the playing surface, nor did he express an intent to deviate from the ordinary meaning of "upright" to require the body section to be "perpendicular" to the playing surface. *See id.*

The intrinsic record supports the court's findings. The '518 patent specification discloses various "travel element" embodiments that correspond to the "traveling component" in the disputed claim language. The specification teaches:

> To accomplish the spinning and launching, the travel element **64** provides multidirectional travel capabilities through the use of, in the first embodiment, bearings placed in a circular manner about the central axis **28** of jousting body **22**. In this first embodiment, there are 5-6 ball bearings, in a metal configuration with or without a ring housing. More bearings can also be utilized with at least three (3) bearings providing a stable footing on the playing surface. Other travel elements will be discussed below. Briefly, the travel elements can include laterally aligned wheels .... The travel element can be a shell with a Teflon outer surface to reduce friction during travel. The shell itself can be on rails or can be semispherical convex. The element could also be a cushion of air between the surface of a table and the jousting element, such as used in air hockey tables.

'518 patent at 6:1-18.

While the specification discloses that travel elements with bearings must have a least three bearings to be stable, the court finds that does not amount to "an expression of manifest exclusion or restriction" in regard to the other disclosed travel element embodiments. *See Teleflex*, 299 F.3d at 1327.

Similarly, the court is not persuaded by LEGO's argument that the patentee disclaimed the other disclosed travel element embodiments and narrowed the claim scope during prosecution. The Federal Circuit has repeatedly held that the doctrine of prosecution disclaimer only applies where "the alleged

disavowing statements [are] both so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) (Citations omitted).

The relevant prosecution history includes the patentee's response to an office action rejection of all claims based on either anticipation by U.S. Patent No. 6,530,817 ("Winslow"), or obviousness over Winslow in view of U.S. Patent No. 2,727,744 ("Watson"). (D.I. 47-1 at A23-41.) Winslow discloses gyroscopic battling tops that are launched at each other, with each top having a tip that supports the body of the top when the top is spinning, and protrusions to contact the opposing top. A disclosed game variation indicates that the winner is determined to be the top that remains spinning after contact. (*Id.* at A63-65.) Watson discloses a hockey puck with embedded roller members that allow the invention to behave on pavement in essentially same manner as a conventional puck on an ice surface. (*Id.* at A54.)

To overcome the Winslow anticipation rejection, the patentee amended claims 1, 20, 21, and 22 with the disputed language. (*Id.* at A43-50). The claim 1 traveling component amendment is representative:

> 1. A jousting element . . . comprising:
> a. a body section arranged about a centrally aligned vertical axis, said body section configured to rotate about said centrally aligned vertical axis and to be carried above a playing surface;
> b. a traveling component to carry said body section, said traveling component connected to said body section and providing for multidirectional travel of said body section above said playing surface; <u>said traveling component comprising a stable footing on said playing surface to maintain said body section in an upright position without the use of centrifugal force;</u>
> c. a first playing component interoperable with said body section, said <u>first</u> playing component configured to <u>kinetically</u> engage <u>and form a scoring connection with a second playing component on</u> a second jousting element.

(D.I. 47-1 at A44.) In explaining the traveling component amendment and its relevance to Winslow, the patentee stated:

> . . . Winslow states as can be seen in column 1 around line 29 "in one embodiment, the tip is designed to support the body of the top when the body is in a spinning motion or movement." Applicant respectfully points out to Examiner that the spinning motion is centrifugal force which maintains the top in an upright position. Accordingly, the use of a spinning motion to maintain the top in an upright position is not the same as [a stable footing on said playing surface to maintain said body section in an upright position without the use of centrifugal force] as provided in claim 1.

(*Id.* at A51.)

To overcome the obviousness rejections of claims 2 and 19, which are drawn to specific embodiments of the traveling component that contain bearings, the patentee stated that there would be no motivation to combine Watson with Wilson. Specifically, the patentee argued the combination would be counter to Wilson's intended purpose and principle of operation:

> . . . Winslow is directed to objects which "fall over." For an object such as a top to easily "fall over" and stop spinning, the center of gravity of the object must be higher than the base. With a spinning object such as a top in the Winslow reference, by moving the center of gravity lower and increasing the "footing" by replacing the tip of the top with the rollers or balls in the Watson reference, the

> Winslow reference can no longer easily spin, fall over or topple after a collision with another top. Accordingly its function would be destroyed.
>
> ... [I]t is implicit that in a non-spinning top, the top would fall over because the centrifugal force would no longer be acting to keep the top upright. . . . . [When] two tops [are] launched towards one another having rollers or balls in lieu of the tip, [they] may contact one another but the winner would not be able to be determined because the "modified top" would be incapable of being toppled. Accordingly, there would be no "top" left standing or spinning, and another primary purpose or function of the game, i.e. to determine the winner, would be destroyed.

(*Id.* at A54.)

The court finds that the patentee's statements during prosecution are not a "clear and unmistakable disavowal of claim scope." *See Omega Eng'g.*, 334 F.3d at 1326. In his response, the patentee identified intrinsic properties of the prior art gyroscopic tops -- they are upright when spinning and fall over when they are not. He also explained that unlike the tip in Wilson, the "stable footing" in his invention does not need a spinning motion, *i.e.*, centrifugal force, to support the body in an upright position. That is not a "clear and unmistakable" statement that only a travel element with at least three points of contact on the playing surface is capable of supporting the body in an upright position without the use of centrifugal force. *See Omega Eng'g.*, 334 F.3d at 1326. Moreover, the patentee's later argument regarding "increasing the 'footing' by replacing the tip of the top with [] rollers or balls" did not disclaim other travel element embodiments because that argument was directed toward an obviousness rejection of claims drawn only to specific travel element embodiments that contain three bearings. (*See* D.I. 47-1 at A54.) The court therefore finds the specification and prosecution history do not limit the claim term "stable footing" to a single travel element embodiment having three points of support on the playing surface.

Further, the court finds that the prosecution history bolster's Battle Toys argument that the claim language provides context for a "stable footing," namely that a footing is stable if it "maintain[s] said body section in an upright position without the use of centrifugal force." (D.I. 41 at 5.) *See Phillips*, 415 F.3d at 1314 ("The claims themselves provide substantial guidance as to the meaning of particular claim terms."). LEGO contends that approach is improper because it renders the term "stable" superfluous. (D.I. 45 at 3 (citing *Merck & Co, Inc. v. Teva Pharm.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of a claim is preferred over one that does not do so.").) Mindful of the cannons of claim construction, the court construes a "stable footing" as "a structure that contacts the playing surface to support the body section in an upright position without the use of centrifugal force."

In regards to the disputed term "upright," the court finds the patentee did not express an intent to deviate from the ordinary meaning to require the body section to be "perpendicular" to the playing surface. Indeed, the specification discloses "a flat *horizontal* planar surface" as a playing field preferred embodiment, '518 patent at 3:48-51, and the patentee claimed a "body section configured to rotate about [a] centrally aligned *vertical* axis," *id*. at 10:40-42. (Emphasis added). However, instead of requiring the body section to be maintained in a "vertical" position, which would be "perpendicular" to the playing surface, the patentee used the less restrictive claim term "upright." *See id*. at 10:47-49 ("[A] "stable footing on [the] playing surface to maintain [the] body section in an upright position . . . ."). The court must therefore reject LEGO's proposed construction because the claim terms "vertical" and "upright" are presumed to have different meanings under Federal Circuit precedent. *See CAE Screenplates Inc. v.*

4

  2.  The term "[first playing component configured to] kinetically engage and form a scoring connection with a second playing component" is construed to mean "a weapon element configured to connect to, hook, collide with, impact, or capture a corresponding target element due to at least one of the elements being in motion"[2]

---

*Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("[W]e must presume that the use of [] different terms in the claims connotes different meanings.").

  LEGO further argued in its answering brief, and at the *Markman* hearing, that "the upright position can be viewed as the orientation of the body section when the toy is spinning." (D.I. 45 at 10.) It proposed the disputed term means that "the body section is kept in the same orientation when the toy is not spinning as it is when the toy is spinning." (*Id.*) The Court rejects that construction as well. As the patentee explained, centrifugal force from spinning holds the top in an upright position, and when it stops spinning it falls down, i.e., there is no centrifugal force. (*See* D.I. 47-1 at A54.) Presumably LEGO would equate "same orientation . . . when the toy is spinning" to mean when the centrifugal force is great enough to hold the "centrally aligned vertical axis" "perpendicular" or "nearly perpendicular" to the playing surface. But anyone who has seen a toy top can attest that as the spinning motion slows down the top begins to wobble -- because the centrifugal force is decreasing. The top can still be said to be in an "upright" position because there is still some amount of centrifugal force keeping it from falling over. The court finds Battle Toys' proposed construction -- "maintain or support the body section so that it does not fall over when not spinning" -- captures this concept. Therefore, the entire disputed phrase "stable footing on said playing surface to maintain said body section in an upright position without the use of centrifugal force" is construed to mean "a structure that contacts the playing surface to support the body section so that it does not fall over when not spinning."

  The court notes that both parties dedicated a substantial portion of their briefing and oral argument regarding the instant disputed phrase and a particular disclosed travel element -- a semi-spherical convex shell. The parties' arguments were geared toward resolution of infringement. The court declines the parties' invitation to resolve infringement at this stage of the proceedings. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("[A] sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems . . . is properly left to the trier of fact."); *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.").

[2] Battle Toys argues the disputed phrase needs no construction because it has an ordinary meaning that would be easily understood by a juror. (D.I. 41 at 14.) But if the court construes the phrase, Battle Toys argues "kinetically engage" should be construed as "contacting due to energy possessed by virtue of its being in motion," (*id.* at 10), and "scoring connection" should be construed as "contact or coupling that results in a score," (*id.* at 13). LEGO proposes the entire phrase should be construed as "move together, beyond mere contact, such that the 'playing components' (e.g., weapons) become interlocked, joined or fastened together, to add or remove points from a player's game score." (*Id.*)

  The present invention relates to jousting toys that are designed to collide with each other. *See e.g.*, '518 patent at 4:7-32, 6:19-40, 7:32-8:16, 9:9-31. In that context, the court agrees with Battle Toys that

5

the ordinary meaning of "engage" would indicate that the weapon element is designed to contact an opposing target element. (D.I. 41 at 10 ("[T]roops may "engage" when they come into contact with the enemy, or swordsmen may "engage" when they strike each other's swords").) LEGO conflates the word "engage" with "scoring connection" to require the weapons to become "interlocked, joined or fastened together." The court agrees with Battle Toys that this construction is overly restrictive and would exclude multiple "scoring connection" preferred embodiments, discussed below, "including wherein points are scored if an element is dislodged or detached upon contact, ['518 patent at 5:16-23], wherein a sword connects with a shield, [*id.* at 6:42-49], and wherein the impact or connection of a target element to a weapon element on an opponent's jousting element will signal either a score LED to light up or a detraction LED to light up indicating the outcome of the jousting combat, [*id.* at 8:63-67]." (D.I. 41 at 13-14.) "A claim interpretation that reads out a preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1349 (Fed. Cir. 2003) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).

LEGO argues its proposed "scoring connection" construction is proper because the patentee narrowed the relevant claim scope during prosecution. (D.I. 40 at 11.) As discussed above, the patentee amended certain independent claims to overcome a Winslow prior art anticipation rejection. Specifically, the patentee added the following language regarding playing components (*i.e.*, weapon and target elements): "a first playing component . . . configured to <u>kinetically</u> engage <u>and form a scoring connection with a second playing component on</u> a second jousting element." (D.I. 47-1 at A44.) To distinguish Winslow, the patentee explained:

> Winslow states as can be seen in column 2 around lines 28, "each of the tops are set in a spinning motion toward one another to allow the protrusion to contact one another." Applicant respectfully points out to the Examiner that "contact one another" is not the same as "forming a scoring connection" as provided by applicant in claim 1.

(*Id.* at A52.) LEGO states its proposed construction reflects the prosecution history "by expressly noting that mere contact with another toy is not sufficient to form a 'scoring connection.'" (D.I. 40 at 11.) LEGO therefore argues the patentee's statement that "'contact one another' is not the same as forming a 'scoring connection'" is a clear disavowal of claim scope that Battle Toys is trying to recapture with its proposed construction. (D.I. 45 at 12.) The court disagrees.

The Federal Circuit has made clear that the doctrine of prosecution disclaimer applies only where "the alleged disavowing actions or statements made during prosecution [are] both clear and unmistakable." *Omega Eng'g*, 334 F.3d at 1326. The court finds the patentee's amendment and comment do not meet that high standard.

The '518 patent does not state that mere contact between the toys is sufficient to form a "scoring connection." Rather, the '518 patent teaches that "[i]n order score points and detract points . . . the jousting bodies . . . have a number of weapon elements and target elements." '518 patent at 4:33-36. And a collision between two jousting elements only results in a score when the weapon of one jousting element connects to, hooks, collides with, impacts, or captures the corresponding target on the other jousting element, or if the weapon is detached. *See id.* at 5:19-23, 7:46-51, 8:1-10, 8:63-67, 9:12-20. Otherwise, the collision between the two jousting elements results in a draw. *See id*. The '518 patent further discloses various weapon/target element pair examples to create a "scoring connection," including: hook/loop, sword/shield, positive/negative valence magnets, and Velcro hook/loop fasteners. *Id.* at 4:51-63, 6:45-48, 8:33-53.

Wilson, on the other hand, does not disclose separate weapon and target elements; rather, the tops each contain at least one protrusion. The tops are launched in a spinning motion toward one another,

6

    3.      The term "hooked arm connecting to said wire frame hoop" is construed to mean "hooked arm either captures the wire frame hoop, or detaches due to a collision with the second jousting element."[3]

---

which causes the protrusions to contact, and the winner is determined to be the top that remains spinning after contact. (D.I. 47-1 at A63-65.) Accordingly, a "scoring connection" in the present invention is distinguishable from the "contact" in Winslow that determines the winner. The present jousting elements could collide or contact each other numerous times without resulting in a "scoring connection" necessary to determine a winner. The court therefore finds the patentee's statement that "'contact one another' is not the same as 'forming a scoring connection'" is not a "clear and unmistakable disavowal of claim scope" that would exclude disclosed "scoring connection" embodiments where a weapon element connects to or impacts a corresponding target element. *See Omega Eng'g.*, 334 F.3d at 1326. Thus, the term is construed to mean "a weapon element configured to connect to, hook, collide with, impact, or capture a corresponding target element due to at least one of the elements being in motion."

[3] This term appears in dependent claim 4, which claims a particular "scoring connection" for embodiments where the weapon element is a hook and the target element is a wire frame loop. The court declines to fully adopt either of the proposed constructions relating to this term. Battle Toys reaches too far with its proposed "contacting or coupling" construction, (D.I. 41 at 14-15), while LEGO's "captur[ing]" only limitation is unduly restrictive, (D.I. 40 at 13-14). The court's construction falls between the parties' proposals and comes directly from the specification. *See Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic Corp.*, 90 F.3d 1576, 1582 (1996)) ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'").

    The '518 patent specification teaches that "weapon elements 40 . . . formed as a spiral hooked configuration . . . can hook into the [wire frame hoop] target elements 42 and score a point with the weapon element on [an opposing] jousting body. . . . [Or] if the weapon elements 40 experience a strong collision with another jousting element or body 22, then the weapon element 40 could be dislodged or detached and the player would lose points for the loss of a weapon." *See* '518 patent 4:51 to 5:23. The specification's description of game scenarios further bolsters the court's construction.

> Players . . . spin and launch their jousting elements 22 towards the opponent. If one jousting element captures the other, or one gets an extension 40 through a ring 42, the players whose weapon caught the ring scores in this play, a value 50 of two points. If a weapon extension falls off a jousting body 46 due to a collision, the opposing player scores in this case, a loss value 50 of one point. If the two pieces collide and neither is captured or disarmed, the two pieces are reset and another attempt is made at jousting. ...
> 
>   An alternative game play is one where there are fixed attack configurations. The attack arms cannot be detached from the jousting body, and each player scores 1 point for a capture and the game is played until one of the players reaches five points or all figures have been cycled through the process.

'518 patent at 9:13-21, 32-36. Accordingly, Battle Toys' proposed construction is too broad because the specification clearly indicates contact that does not capture or disarm either jousting element would not result in a "score" for embodiments with hook weapon elements and wire frame loop target elements.

4. The term "means for rotating said body section" is construed pursuant to 35 U.S.C. § 112(f). The claimed function is "rotating said body section." The corresponding structure is "a pull cord and a spinning gear mechanism or element."[4] '518 patent at 7:14-28, 8:46-58.

5. The term "means for carrying said body section above a playing surface" is construed pursuant to 35 U.S.C. § 112(f). The claimed function is "carrying the body section above a playing surface." The corresponding structure is "structure between the 'stable footing' and the body section, such as travel base 104."[5]

---

Similarly, LEGO's construction is too narrow because it only accounts for an embodiment where the hook weapon element cannot be detached. The court therefore construes the terms to mean "hooked arm either captures the wire frame hoop, or detaches due to a collision with the second jousting element."

[4] The four disputed "means for" terms all appear in claim 20, and the parties agree all four terms should be construed pursuant to § 112(f). Here, both parties correctly identify the claimed function as "rotating the body section," but they dispute the corresponding structure. At the *Markman* hearing, the parties identified the fundamental disagreement as to whether this term refers to a torque application means. (*Markman* Transcript ("Tr.") (D.I. 56) at 61:6-63-6.) LEGO argues that "[s]ince the claimed function is 'rotating the body section,' any corresponding structure must cause the body section to rotate, *i.e.*, be a structure that provides an outside force to cause actual rotation of the body section." (D.I. 40 at 15.) In contrast, Battle Toys argues that the specification uses the words "rotate" and "spin" interchangeably; therefore, a disclosed structure that *permits* the toy to spin fulfills the "rotating" function. (D.I. 41 at 16 (emphasis added).) The court finds LEGO's argument more persuasive. "Application of § 112[(f)] requires identification of the structure in the written description . . . necessary *to perform* [the recited] function." *Micro Chemical, Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257-58 (Fed. Cir. 1999) (emphasis added). Battle Toys' identified structures -- ball bearings, laterally aligned wheels, a shell with a Teflon outer surface, shell on rails, semi-spherical convex shell, and equivalents -- may allow rotation, but they are not capable of causing rotation, and are therefore not structures that *perform* the disclosed function of "rotating the body." Accordingly, the Court adopts LEGO's proposed structure of "a pull cord and a spinning gear mechanism or element." (D.I. 40 at 15); '518 patent at 7:14-28, 8:46-58.

[5] Again, both parties correctly identify the claimed function as "carrying the body section above a playing surface." And they identify similar structures. Battle Toys uses Figure 6 to identify the corresponding structure as the "top portion of traveling element 64, base 86 and equivalents." (D.I. 46 at 17.) In its answering brief, LEGO uses Figure 8 to identify the "structure between the 'stable footing' and the body section, such as travel base 104." (D.I. 45 at 19 n.7.) The only difference between the specifically identified structures is that LEGO's is directed to embodiments that contain the spinning gear

8

6. The term "means for providing a stable footing on said playing surface to maintain said body section in an upright position without the use of centrifugal force" is construed pursuant to 35 U.S.C. § 112(f). The claimed function is "providing contact with the playing surface sufficient to support the body section so that it does not fall over when not spinning." The corresponding structure is "bottom portion of travel element 64 (comprising at least one of: at least three bearings, laterally aligned wheels on a vertically aligned rotatable hinge, a shell with a Teflon outer surface, a shell on rails, a semispherical convex shell)."[6] '518 patent at 6:1-18.

7. The term "means for kinetically engaging said first playing component with a second jousting element to form a scoring connection" is construed pursuant to 35 U.S.C. § 112(f). The claimed function is "connecting to, hooking, colliding with, impacting, or capturing a corresponding target element (a wire frame loop (42), shield (84), negative valence magnet (130), Velcro loop fastener (137), or

---

mechanism or element, *e.g.*, Figures 8 and 12. The Court adopts LEGO's proposed structure because it aligns with the court's "means for rotating" construction.

[6] The parties identified essentially identical claimed functions -- "providing a stable footing on the playing surface to maintain the body section in an upright position without the use of centrifugal force." The only difference being LEGO's substitution of "even when the toy is not spinning" for "without the use of centrifugal force." (D.I. 40 and 17.) The court construes the function to be consistent with non-means-plus-function phrase. LEGO's identified structure is "at least three bearings." (*Id.*) As discussed in Note 1, *supra*, the court finds that the patentee did not limit "stable footing" to a single disclosed embodiment requiring at least three points of contact on the playing surface. In identifying corresponding structure under § 112[(f)] the Federal Circuit has warned against "import[ing] functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function." *Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001). The court therefore adopts a modified version of Battle Toys proposed structure "bottom portion of traveling element 64 (comprising at least one of: at least three bearings, laterally aligned wheels on a vertically aligned rotatable hinge, a shell with a Teflon outer surface, a shell on rails, a semispherical convex shell)." (D.I. 41 at 18-19); '518 patent at 6:1-18.

equivalent) on the second jousting element by virtue of at least one of the jousting elements being in motion." The corresponding structure is "a weapon element (hook (40), sword (82), positive valence magnet (132), Velcro hook fastener (135), or equivalent)."[7]

Dated: December 2, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

---

[7] The parties agree that the claimed function is "kinetically engage said first playing component with a second jousting element to form a scoring connection." (D.I. 41 at 19-20; D.I. 40 and 18-19). But LEGO recognizes the function language itself is disputed and proposes a construction for the disputed language: "to interlock two playing components together through movement such that the toys are joined or fastened together, beyond mere contact with one another, through which points are added or removed." (D.I. 40 and 18-19.) LEGO's corresponding structures are "a hook and loop arrangement, Velcro, and magnets of opposite valences." (*Id.* at 19.) LEGO's proposed function and corresponding structures are limited based upon arguments raised and rejected in the non means-plus-function disputed phrase in Note 2, *supra*. On the other hand, Battle Toys' identified structures include "weapon" elements (40, 82, 132, and 135), but not any corresponding "target" elements necessary to form the "scoring connection." (D.I. 41 at 19-20.) For the reasons discussed in Note 2, *supra,* the court adopts its own construction.